NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0788n.06
Filed: December 29, 2008

No. 07-1604

## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Joseph M. Dorr, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| City of Ecorse; Larry Salisbury, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendants-Appellants. | ) | |

**Before:**    **KEITH, MERRITT, GIBBONS, Circuit Judges**

**DAMON J. KEITH, Circuit Judge**.  In this action involving a claim brought under 42 U.S.C. § 1983 for violation of Plaintiff-Appellee Joseph M. Dorr's ("Dorr") substantive due process rights, Defendants-Appellants City of Ecorse ("City") and Larry Salisbury ("Salisbury"), who served as the mayor of Ecorse during the relevant period, appeal the district court's denial of Defendants' motion for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50, and Defendants' request for a new trial, pursuant to Fed. R. Civ. P. 59.  Defendants also appeal the district court's award of attorneys' fees and costs, and the award of punitive damages against Salisbury.  For the reasons explained below, we **AFFIRM** the decisions of the district court.

### I.  BACKGROUND

#### A.  Factual

This matter centers around an ongoing dispute between two neighbors – Dorr and Salisbury – in the city of Ecorse, Michigan. In November 1996, Dorr purchased his home in Ecorse, directly next door to Salisbury. At the time of the purchase, Dorr's home was over ninety years old, in need of substantial repairs and not in compliance with City's current zoning ordinance setback requirements. In fact, the home, like many others in Ecorse built in the early 1900s, had never been in compliance with modern zoning ordinances. Accordingly, Dorr's property was considered a lawful non-conforming structure.

Upon purchasing his home and gaining the requisite approvals from City, Dorr immediately began making repairs and significant improvements to the home and bringing it up to code. On March 20, 1997, after Dorr had completed substantial repairs to the property, City issued him a certificate of occupancy. Around the same time, Dorr also received a beautification award ("Keep Michigan Beautiful Award") from a local civic association in recognition of the considerable improvements he made to the property.

From the time Dorr purchased the home, and throughout the time he worked on repairing the home, Dorr and Salisbury had a contentious relationship.[1] In late 1996, Salisbury filed a lawsuit against Dorr (and City) in Wayne County Circuit Court, alleging various zoning ordinance violations. Salisbury's lawsuit was eventually adjudicated as a "no cause of action," and on appeal, the Court of Appeals of Michigan deemed Salisbury's lawsuit "frivolous" and brought to harass and

---

[1]In their very first meeting, Salisbury informed Dorr that Salisbury had been involved in numerous lawsuits with the previous owner of Dorr's property, and that he would also do everything in his power to keep Dorr from occupying the property.

injure Dorr. Accordingly, the court ordered Salisbury to pay actual damages and expenses, including attorneys' fees, to Dorr and City.

In early June 2003, Dorr applied to City for a building permit in order to construct a 16' x 22' extension of his garage. On June 19, 2003, City issued Dorr a building permit, and he commenced construction. Dorr completed construction of the extension in early September. On September 11, 2003, Dorr received approval from City on his final garage inspection.

On November 1, 2003, Salisbury became mayor of Ecorse. Around the same time, Dorr, having recently divorced, decided to sell his house in Ecorse in order to move closer to his children. On April 11, 2004, Dorr entered into an agreement to sell his home for $165,000. Pursuant to City's ordinances, in order to sell the home, Dorr was required to obtain a new certificate of occupancy and undergo standard building code inspections. On June 8, 2004, Dorr received City's approval for a certificate of occupancy for the plumbing and electrical requirements. On June 15, 2004, City informed Dorr that he needed only a furnace certification to receive his final certificate of occupancy. However, over the next couple of months, City's building department asked Dorr to make additional minor repairs to his home before City would issue the final certificate of occupancy. On August 31, 2004, Dorr's property passed the final inspection required for the certificate of occupancy.

Despite passing all necessary inspections, Dorr was denied a certificate of occupancy. Between June 2004 and June 2005, Dorr repeatedly petitioned City's building department for the certificate of occupancy, but was denied at all levels. Finally, Dorr petitioned the City's Zoning Board of Appeals, the final decision maker on zoning issues. The zoning board denied Dorr a certificate of occupancy.

Ultimately, Dorr obtained a court order from the State of Michigan Circuit Court of Wayne County, signed November 29, 2006, compelling City to issue Dorr his certificate of occupancy. However, when Dorr presented the court order to City's building department, City still refused to issue a certificate of occupancy. Dorr continued to call and write City regarding the issuance of his certificate of occupancy, to no avail. The inability to obtain a certificate of occupancy precluded Dorr from selling his home.

### B. Procedural

On August 9, 2005, Dorr sued City and Salisbury, in his official and individual capacity, alleging they violated Dorr's substantive due process rights by unlawfully denying him a certificate of occupancy, which prevented him from selling his property. After the district court denied City and Salisbury's motion for summary judgment as untimely, the matter went to trial. On January 17, 2007, a jury found that both City and Salisbury violated Dorr's substantive due process rights, in violation of 42 U.S.C. § 1983, by denying Dorr his certificate of occupancy, and awarded Dorr compensatory damages in the amount of $22,000 ($11,000 each against both City and Salisbury), and punitive damages in the amount of $55,000 against Salisbury.

After the verdict was entered, City and Salisbury timely filed a renewed motion for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50(b)[2] and, alternatively, moved for a new trial, pursuant to Fed. R. Civ. P. 59. Additionally, Dorr filed a motion for attorneys' fees and costs. On May 3, 2007, the district court issued an order denying City and Salisbury's motion for judgment as

---

[2] City and Salisbury moved for directed verdict, pursuant to Fed. R. Civ. P. 50(a), at the end of Dorr's opening statement, and at the close of Dorr's case-in-chief. Both motions were denied.

a matter of law and the request for a new trial. Pursuant to 42 U.S.C. § 1988(b), the court awarded

Dorr attorneys' fees in the amount of $27,975.00 and costs in the amount of $1,983.00, to be paid

jointly and severally by City and Salisbury.

City and Salisbury filed a timely appeal of the district court's denial of their post-trial

motions, as well as the court's award of attorneys' fees and costs. On appeal, City and Salisbury

argue that the district court committed four reversible errors. First, City and Salisbury argue the

district court erred by denying them judgment as a matter of law on Dorr's § 1983 claim. Second,

Salisbury argues the district court erred by denying him judgment as a matter of law on the award

of punitive damages. Third, City and Salisbury argue they are entitled to a new trial because the

district court erred by making improper evidentiary rulings. Finally, City and Salisbury argue that

the district court erred in its award of attorneys' fees and costs to Dorr. We address each of these

arguments in turn.

## II. ANALYSIS

### A. Judgment As A Matter of Law

We conduct a *de novo* review of the district court's denial of a motion for judgment as a

matter of law, and of a renewed motion for judgment as a matter of law. *White v. Burlington N. &*

*Santa Fe Ry. Co.*, 364 F.3d 789, 794 (6th Cir. 2004); *Pouillon v. City of Owosso*, 206 F.3d 711, 719

(6th Cir. 2000). In determining whether either motion should have been granted, we review the

entire record and "must draw all reasonable inferences in favor of the nonmoving party, and [] may

not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.,*

*Inc.*, 530 U.S. 133, 150 (2000). The motion may be granted only where a party has been fully heard

on an issue during a jury trial, there is no genuine issue of material fact for the jury, and there is no

legally sufficient evidentiary basis for a reasonable jury to find for the prevailing party with respect

to that issue. Fed. R. Civ. P. 50 (a); *Gray v. Toshiba Am. Consumer Prods.*, 263 F.3d 595, 598 (6th

Cir. 2001).

## 1.  42 U.S.C.  § 1983

While not a source of substantive rights, 42 U.S.C. § 1983 provides a remedy for the

deprivation or unlawful violation "of any rights, privileges, or immunities secured by the

Constitution and laws." 42 U.S.C. §1983. To prove a claim under § 1983, a plaintiff must establish

he was deprived of a right secured by the United States Constitution or laws of the United States, and

that he was subjected to or caused to be subjected to this deprivation by a person acting under color

of state law. 42 U.S.C. §1983; *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995). A

municipality, such as Ecorse, sued under § 1983 will be liable only if the injury occurs pursuant to

a municipal custom or policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also*

*Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) ("[T]o satisfy the Monell

requirements a plaintiff must 'identify the policy, connect the policy to the city itself and show that

the particular injury was incurred because of the execution of that policy.'") (quoting *Coogan v. City*

*of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)) .

Here, the jury found both City and Salisbury liable, under 42 U.S.C. § 1983, for violating

Dorr's substantive due process rights by denying Dorr his certificate of occupancy. City and

Salisbury subsequently renewed their motion for judgment as a matter of law, and alternatively,

moved for a new trial. City and Salisbury assert on appeal that the district court erred in its finding

because there was no legally sufficient evidentiary basis for the jury to find (1) that Dorr had a

protectable property interest in the certificate of occupancy;[3] (2) a practice or custom by City

sufficient to impose liability on City for depriving Dorr of a protected right; or (3) that Salisbury

acted arbitrarily and capriciously, under color of state law, to deprive Dorr of a protected right.

Having the benefit of oral argument, and having carefully conducted a *de novo* review of the record,

we disagree.

In determining whether Dorr established a vested property interest, we must look to

substantive state zoning laws. *See Silver v. Franklin Twp. Bd. of Zoning Appeals*, 966 F.2d 1031,

1036 (6th Cir. 1992). In *Silver*, this Court summarized the criteria upon which a person obtains a

---

[3] Despite their contention otherwise, it is questionable whether this issue was properly raised by Defendants prior to submission to the jury or in their renewed motion for judgement as a matter of law, in accordance with Fed. R. Civ. P. 50. *See Ford v. County of Grand Traverse*, 535 F.3d 483, 491 (6th Cir. 2008) (a post-trial motion for judgment as a matter of law "is not available at anyone's request on an issue not brought before the court prior to submission of the case to the jury") (quoting *Am. & Foreign Ins. Co. v. Bolt*, 106 F.3d 155,160 (6th Cir. 1997)).

The record indicates the parties agreed that one of the issues to be litigated was whether Dorr had a protected property right "triggered by the issuance of a building permit." In addition, at the close of Dorr's case-in-chief, defense counsel moved for directed verdict, arguing "there has been no showing that there is a custom, a policy, any sort of pattern of an effort, if you will, to deny Mr. Dorr's [sic], *what he says to be a right, a [certificate of occupancy]*."

In *Kusens v. Pascal Co.*, 448 F.3d 349 (6th Cir. 2006), we recognized that courts have taken a liberal view of what constitutes a pre-verdict motion sufficient to support a post-verdict motion where the grounds in the pre-verdict motion are not stated with "technical precision," but the purposes of Rule 50(b) – "i.e., providing notice to the court and opposing counsel of any deficiencies in the opposing party's case prior to sending it to the jury" are satisfied. *Id.* at 361.

We find it a close call as to whether the above references satisfy the purposes of Rule 50 such that Defendants properly preserved this issue for review on appeal. Nevertheless, reviewing the issue, and viewing the evidence in favor of Plaintiff, a reasonable jury could find that Dorr had a protected property right.

protected property right under the Fourteenth Amendment. Applying an "entitlement test," we held that a protectable property right supporting a substantive due process claim exists only if a plaintiff has a "'legitimate claim of entitlement' or a 'justifiable expectation' in the approval of his plan." *Silver,* 966 F.2d at 1036 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)); *see also Triomphe Investors v. City of Northwood*, 49 F.3d 198, 202-03 (6th Cir. 1995). Under Michigan law, it is well established that possession of a valid building permit coupled with substantial reliance thereon, including actual construction, will bestow vested property rights to a non-conforming structure. *See Dingeman Adver. v. Algoma Twp.*, 223 N.W.2d 689, 691 (Mich. 1974)*; see also Schenden v. Addison Twp.*, 2004 WL 1908231, at *5 (Mich. Ct. App. Aug. 26, 2004).

In the instant matter, prior to Salisbury's mayoral term, not only had Dorr been granted two separate building permits from City – one for the original construction, and another for the small addition to his home – but, in reliance on the City-issued building permits, he had also completed renovations to the original structure, as well as construction of the addition and passed all relevant building code inspections. Moreover, despite City and Salisbury's assertion that Dorr's non-conforming use exceeded what City sanctioned, nothing in the record or at oral argument indicates City ever attempted to revoke the building permits or the earlier certificate of occupancy it issued to Dorr. Additionally, Dorr had a signed court order from the Wayne County Circuit Court mandating that City issue Dorr a certificate of occupancy. This evidence is legally sufficient to support the jury's determination that Dorr established vested rights in the non-conforming structure, and accordingly, a protected property interest in the certificate of occupancy.

As noted above, even after a protected property interest has been established, for City to be liable under § 1983, Dorr must also show that (1) City and Salisbury acted pursuant to a custom or policy of the municipality and (2) the injury or harm to Dorr was incurred as a direct result of the execution of that policy. *Garner*, 8 F.3d at 364. Under § 1983, a practice or custom involves a widespread course of conduct by municipal officials that has become a traditional way of carrying out policy. *Monell*, 436 U.S. at 690-91.

Dorr presented evidence that City approved all of his permits, and the parties stipulated that Dorr's home passed its final inspection. Dorr also presented evidence from former City inspectors that once Salisbury was elected mayor of Ecorse in November 2003, he changed the way City enforced its zoning code. Dorr presented evidence that Salisbury hired a new building official to enforce the code in the manner Salisbury saw fit, particularly in regard to property setbacks. Salisbury himself testified that he wanted "strict enforcement." Finally, Dorr presented evidence that he was denied his certificate of occupancy because his property did not conform to setback requirements, even though City had approved his building plans, and that Carl Brown, Salisbury's new, hand-picked building official, was the person who made the determination that Dorr's property was now unlawfully non-conforming.

We find the evidence Dorr presented sufficient for the jury to have concluded that a city policy of strict enforcement became the traditional way of enforcing City's zoning code once Salisbury became mayor, in contrast to City's prior decisions on zoning issues. Thus, we disagree with Defendants' assertion that Dorr's evidence was insufficient to hold City liable.

City and Salisbury also urge us to find that there was no legally sufficient evidentiary basis for the jury to have found that Salisbury was acting under color of state law. In support of this assertion, City and Salisbury contend that Salisbury had nothing to do with the decision to grant or deny Dorr's certificate of occupancy, and had no input into whether building permits were issued. City and Salisbury further note that Salisbury's actions involving lawsuits prior to 2003 were "purely private," and not acts under color of state law.

In order for Salisbury to be held liable under § 1983, he "must [have] possess[ed] power by virtue of state law, then misuse[d] that power in a way that violates federal constitutional rights." *Christian v. Belcher*, 888 F.2d 410, 414 (6th Cir. 1989). It is not controverted that Salisbury was mayor at the time Dorr sought to obtain the certificate of occupancy needed to sell his home. As mayor, Salisbury was indeed clothed with the state's authority. *See Screws v. United States*, 325 U.S. 91, 111 (1945). Salisbury's own trial testimony indicated that he was directly involved with the city's affairs on zoning issues. Moreover, Dorr presented evidence that Salisbury decided to change the City policy regarding lawful non-conforming structures and strictly enforce City's zoning ordinances and building codes. Additionally, the jury was presented with evidence indicating the mayor's office was involved with the grant or denial of zoning decisions. Finally, Dorr presented evidence that Salisbury retaliated against inspectors who granted permits to Dorr, and that Salisbury knew that the reasons used by City's building department to withhold Dorr's certificate of occupancy were the same ones deemed frivolous and intended to harass Dorr in Salisbury's earlier lawsuit against Dorr.

Salisbury had the opportunity to present evidence to counter Dorr's claims that he played a critical role in City's refusal to provide Dorr a certificate of occupancy. Indeed, Salisbury testified that he had nothing to do with the decision to deny Dorr a certificate of occupancy, and he denied having any input in whether certificates of occupancy were granted or denied, in general. The jury was free to believe Salisbury's testimony in whole or in part, but chose not to credit Salisbury.[4] The evidence presented is legally sufficient to establish that Salisbury acted under color of state law.

Finally, Dorr presented sufficient evidence of damages resulting from City and Salisbury's actions. After he completed the improvements on his property, Dorr's home was valued at $165,000. He subsequently entered into a contract to sell the house for $165,000 but was legally unable to close on the sale as a result of City's refusal to grant the certificate of occupancy. Resultantly, Dorr could not close on a $120,000 purchase agreement for another home closer to his children. Each of the City officials who testified at trial, including Salisbury, indicated that they were aware that Dorr would not be able to sell his house without a certificate of occupancy. Thus, it was clearly foreseeable that Dorr would suffer damages as a result of City and Salisbury's refusal to issue the certificate of occupancy. Defendants offered no evidence to prove otherwise. Accordingly, the evidence presented is legally sufficient to establish Dorr's damages.

We therefore conclude that the district court did not err in denying City and Salisbury's motion for judgment as a matter of law with regard to the § 1983 claim.

---

[4] As noted earlier, when deciding whether the district court erred in denying Defendants' motion for judgment as a matter of law, we consider all evidence in the light most favorable to the Plaintiff and must not make credibility determinations. *Reeves*, 530 U.S. at 150; *White*, 364 F.3d at 794-95.

## 2. Punitive Damages

After it found City and Salisbury liable to Dorr under the § 1983 claims, the jury awarded Dorr punitive damages against Salisbury. Salisbury contested the award of punitive damages in his motion for judgment as a matter of law, arguing that the jury lacked any legally sufficient evidence to find that Salisbury acted with actual malice. The district court denied Salisbury's motion, which Salisbury challenges on appeal.

The standard of review for an award of punitive damages is reasonableness. *Walker v. Norris*, 917 F.2d 1449, 1459-60 (6th Cir. 1990) (citing *Smith v. Wade*, 461 U.S. 30, 54 (1983)). Punitive damages may be awarded in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Hill v. Marshall*, 962 F.2d 1209, 1217 (6th Cir. 1992) (quoting *Smith*, 461 U.S. at 56).

Review of the trial record establishes that there was sufficient evidence to present a question of fact for the jury on the issue of punitive damages. Dorr presented sufficient evidence regarding Salisbury's actions as mayor in 2003 and 2004 from which the jury could infer malicious intent. For example, Dorr presented evidence that Salisbury terminated inspectors who approved permits for Dorr, and ended City's contract with firms that resisted Salisbury's new policy of strict enforcement. In addition, Salisbury testified he was well aware that City's building department was using the same grounds to deny Dorr a certificate of occupancy that the Michigan Court of Appeals held were frivolous and brought to "injure or harass" Dorr. Accordingly, there was sufficient evidence to

support a finding by the jury of malice or, at least "reckless or callous indifference" on the part of Salisbury. Moreover, as punitive damages are awarded to punish and deter, *see Smith*, 461 U.S. at 54, it cannot be said that the jury's assessment of the appropriate amount to deter Salisbury was not eminently reasonable. For these reasons, we find that the district court did not err in denying Salisbury judgment as a matter of law with regard to punitive damages.

## B. Motion for a New Trial

This Court reviews a district court's denial of a new trial for an abuse of discretion. The motion should be denied if the verdict is one which could reasonably have been reached. *Walker v. Bain*, 257 F.3d 660, 670 (6th Cir. 2001). The verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn. *Id.*

City and Salisbury allege that a series of evidentiary errors required the district court to grant them a new trial. Specifically, City and Salisbury argue the district court erred in allowing testimony regarding prior unrelated lawsuits brought by Salisbury to be introduced into evidence because the probative value of the evidence was substantially outweighed by its prejudicial effect, resulting in substantial injustice to Defendants.

We review evidentiary rulings on the relevance and materiality of evidence for abuse of discretion. *Geisler v. Folsom*, 735 F.2d 991, 997 (6th Cir. 1984). The court is granted "broad discretion to determine matters of relevance" and will only review for an "abuse of discretion that affected the substantial rights of a party." *Williams v. Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997) (citing Fed. R. Evid. 403)). An abuse of discretion that does not affect substantial rights

is harmless error and is to be disregarded. Fed. R. Civ. P. 61; *see also Rye v. Black & Decker Mfg. Co.,* 889 F.2d 100, 103 (6th Cir.1989). Abuse of discretion is defined as "a definite and firm conviction" that the trial court erred. *Balani v. Immigration & Naturalization Serv.*, 669 F.2d 1157, 1160 (6th Cir. 1982).

No such conviction can be found here. First, in the parties' Joint Final Pretrial Order, Defendants stipulated to the fact that "Salisbury brought a frivolous lawsuit [against Dorr] in 1996 pertaining to certain zoning issues," and that "Mayor Salisbury was ordered to pay costs for bringing his lawsuit against Dorr." Second, the evidence concerning the prior lawsuits was solicited on examination of Salisbury by Dorr's counsel, without objection, in the following exchange:

> Q: [T]he Court of Appeals not only told you that your case was frivolous, they told you it was brought to harass and injury [sic] Mr. Door [sic], didn't it?
>
> A: I believe so.

Finally, Salisbury testified that, as mayor, he replaced the previous building inspector and personally hired the new building inspector sent to Dorr's property, and that City's building department subsequently used the same grounds upon which Salisbury based his frivolous legal action against Dorr as justification for denying Dorr's certificate of occupancy.

The district court found the evidence of the prior lawsuits plainly relevant to Salisbury's state of mind regarding Dorr, and his motive while acting as mayor. Salisbury had the opportunity on the stand to explain the prior lawsuit, and generally denied that he had an improper motive. The jury weighed his response and based on its decision, found that he lacked credibility. In light of the

record and the relevant standard of review, City and Salisbury's argument that the district court erred in allowing the evidence of the parties' prior lawsuits is not supported. Therefore, we find that the district court did not abuse its discretion when it allowed this information to be admitted into evidence.

### C. Attorneys' Fees and Costs

Defendants also appeal the district court's grant of $27,975 in attorneys' fees, and $1,983 in costs to Dorr. In a § 1983 action, the district court may, in its discretion, allow the prevailing party reasonable attorneys' fees and costs. 42 U.S.C. § 1988(b). We review an award of attorneys' fees under the same standard as evidentiary determinations and will therefore "usually sustain a district court's award and division of attorneys' fees absent an abuse of discretion." *Dean v. Holiday Inns, Inc.*, 860 F.2d 670, 672 (6th Cir. 1988).

"[T]he district court has discretion in determining the amount of a fee award[, which] is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Henley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, the district court actually denied Dorr's request of $58,987.50 in attorneys' fees, agreeing with Defendants that the requested amount was excessive. The court also rejected Dorr's contention that his counsel's hourly rate of $275 was reasonable. The court articulated valid reasons, including prevailing market rate and the quality of representation, for its determination that "a rate of $150.00 per hour is more appropriate than that requested by [Dorr]."

Accordingly, we find no indication that the district court abused its discretion in awarding attorneys'

fees and costs to Dorr in the amounts of $27,975 and $1,983, respectively.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision as to all issues.