Vivian Ann **ARCHIE**, Lisa Darlene Golden, Lisa G. Couch, Plaintiffs–Appellees,

Anthony Wayne Couch, Plaintiff,

v.

David W. **LANIER**, Defendant–Appellant,

**Reed Riley, Defendant.**

No. 94–5836.

United States Court of Appeals, Sixth Circuit.

Submitted Feb. 2, 1996.

Decided Sept. 11, 1996.

Randall P. Salky (briefed), Kathleen L. Caldwell (briefed), Taylor, Halliburton, Ledbetter & Caldwell, Memphis, TN, for Plaintiff–Appellee.

David W. Lanier (briefed), pro se.

Before: MERRITT, Chief Judge; LIVELY and RYAN, Circuit Judges.

RYAN, J., delivered the opinion of the court, in which LIVELY, J., joined. MERRITT, C.J. (pp. 443–444), delivered a separate concurring opinion.

RYAN, Circuit Judge.

Defendant David Lanier filed this interlocutory appeal *pro se*, challenging the district court's rejection of his claim of judicial immunity and the district court's partial denial of his motion to dismiss plaintiffs' civil rights complaint. For the reasons that follow we affirm the denial of judicial immunity, and dismiss the remaining portion of his appeal for lack of appellate jurisdiction.

### I.

Lanier served as an elected chancery court judge in Dyer and Lake Counties, Tennessee, where he also served as a juvenile court judge. He had jurisdiction over divorce proceedings, as well as over child custody and support matters. Plaintiffs were residents of Dyersburg, Tennessee, and claim that Lanier, using his position and power as a county judge, in various ways and on repeated occasions deprived them of their constitutional right to bodily integrity by sexually molesting, assaulting, and abusing them.[1] They

---

1. In a related criminal proceeding, Lanier was convicted of seven counts of violating 18 U.S.C. § 242 for willfully violating the civil rights of various women. He was sentenced to 25 years in prison and appealed his conviction and sentence. This court sitting *en banc* vacated his conviction for reasons that are not important to this appeal. *See United States v. Lanier*, 73 F.3d 1380 (6th Cir.1996) (*en banc*), cert. granted, —— U.S. ——, 116 S.Ct. 2522, 135 L.Ed.2d 1047 (1996).

filed suit under, *inter alia,* 42 U.S.C. § 1983 and alleged as follows.

Vivian Ann Archie first met Lanier in September 1990, when she applied for a secretarial position in his judicial chambers. Archie alleges that during the interview Lanier threatened her with granting her parents custody of Archie's daughter if she did not comply with his sexual requests, after which statement he physically and sexually assaulted her by forcing her to perform oral sex. After this incident Lanier offered Archie a job, which prompted her to return to his chambers a few weeks later. During this second encounter Lanier assaulted her once again.

Lanier followed up on this second incident with a campaign of threatening and harassing phone calls to Archie's home. Archie alleges that Lanier stalked her, harassed her with obscene phone calls, continually threatened to take custody of her daughter away from her, and physically threatened her for a period of one year.

Lisa Darlene Golden worked directly under Lanier's supervision at the Chancery Court. She alleges that, as he had done with Archie, Lanier repeatedly threatened her with the loss of her job and with stripping her of legal custody of her children if she did not comply with his sexual requests. Lanier sexually assaulted Golden and raped her in his chambers. He also stalked and harassed Golden with the purpose of influencing her then impending testimony before the grand jury that ultimately indicted him and at his subsequent criminal trial.

Lisa G. Couch worked at city hall, directly across the street from Lanier's office. While her divorce and custody case was pending before him, Lanier enticed her on several occasions to meet with him socially, and to come to his office to discuss her case. When Couch finally acceded to meet Lanier in his chambers, he raped her. As he had done with the other two plaintiffs, he subsequently harassed her over the telephone and stalked her on repeated occasions. Lanier sexually assaulted her on one other occasion.

Plaintiffs sued Lanier under section 1983 alleging a variety of claims. They claimed, *inter alia,* that Lanier deprived them of their right to personal security and bodily integrity without due process of law in violation of the Due Process Clause of the Fourteenth Amendment; and that they were deprived of the equal protection of the laws and of their right of access to the courts. They also sued Lanier under 42 U.S.C. § 1985 for conspiracy to deny them their civil rights, in addition to asserting a variety of state tort claims.

Lanier responded with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) advancing a variety of incoherent arguments as to why plaintiffs' claims should be dismissed and affirmatively defending on the ground of judicial immunity. The district court granted in part, and denied in part, Lanier's motion. Lanier filed a direct appeal from this decision, challenging the district court's failure to dismiss the remainder of plaintiffs' complaint. He did so without seeking certification under 28 U.S.C. § 1292(b).

## II.

■ Lanier claims that he is entitled to judicial immunity for his actions. We review the district court's denial of immunity *de novo* as it involves purely a legal question. *See Berger v. Cuyahoga County Bar Ass'n,* 983 F.2d 718, 721 (6th Cir.), *cert. denied,* 508 U.S. 940, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993).

■ As a general matter, the Supreme Court has "been quite sparing in its recognition of claims to absolute official immunity." *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988). Judicial immunity, like qualified immunity, is an immunity from suit, not just from an ultimate assessment of damages. *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 287–88, 116 L.Ed.2d 9 (1991).

■ Judicial immunity is overcome only in two sets of circumstances:

[ (1) ] a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity.

. . . .

[ (2) ] a judge is [also] not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. *Id.* at 11–12, 112 S.Ct. at 287–88 (citing *Forrester,* 484 U.S. 219, 108 S.Ct. 538; and *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him,' " shall be able to undertake his duties by acting upon his convictions without fearing personal consequences as a result of these decisions or actions. *Id.* at 10, 112 S.Ct. at 287 (citation omitted).

■ Whether Lanier's actions were "judicial acts" must be answered by looking at "the 'nature' and 'function' of the act, not the 'act itself.' " *Id.* at 13, 112 S.Ct. at 288 (quoting *Stump,* 435 U.S. at 362, 98 S.Ct. at 1107–08). That is to say, "we look to the particular act's relation to a general function normally performed by a judge" to determine whether the action complained of was indeed a judicial act. *Id.* Ultimately, it is the "nature" of the function performed, rather than the identity of the person who performed it, that informs a court's immunity analysis. *Id.* (quoting *Forrester,* 484 U.S. at 229, 108 S.Ct. at 545).

> This court explained that

> the analytical key "in attempting to draw the line" between functions for which judicial immunity attaches and those for which it does not is the determination whether the questioned activities are "truly judicial acts" or "acts that simply happen to have been done by judges." It is the *nature* of the function involved that determines whether an act is "truly" judicial.

*Sparks v. Character and Fitness Comm. of Kentucky,* 859 F.2d 428, 432 (6th Cir.1988) (citations omitted), *cert. denied,* 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989). And, this court has held that " '[a]ny time an action taken by a judge is not an adjudication between parties, it is less likely that the act [will be found to be] a judicial one.' " *Cameron v. Seitz,* 38 F.3d 264, 271 (6th Cir.1994) (citation omitted).

■ The burden is on Lanier to show that the actions plaintiffs challenge justify the invocation of such immunity. *See Buckley v. Fitzsimmons,* 509 U.S. 259, 273–75, 113 S.Ct. 2606, 2616, 125 L.Ed.2d 209 (1993). This he has failed to do. Lanier dedicates only two pages of his lengthy and largely incoherent brief to the issue of immunity and simply asserts that he is entitled to it. We hold that stalking and sexually assaulting a person, no matter the circumstances, do not constitute "judicial acts." The fact that, regrettably, Lanier happened to be a judge when he committed these reprehensible acts is not relevant to the question of whether he is entitled to immunity. Clearly he is not. The judgment of the district court will be affirmed.

### III.

■ Lanier also appeals from the district court's partial denial of his motion to dismiss plaintiffs' civil rights complaint. We consider first, *sua sponte,* whether we have jurisdiction to review this issue. *See Carras v. Williams,* 807 F.2d 1286, 1289 n. 5 (6th Cir. 1986). After careful examination of the recent Supreme Court decisions in *Swint v. Chambers County Commission,* —— U.S. ——, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995), and *Johnson v. Jones,* —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), we conclude that we have no appellate jurisdiction to consider this aspect of his appeal and accordingly we will dismiss it.

■ This court has jurisdiction to review "all final decisions of the district courts of the United States." 28 U.S.C. § 1291. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Certain orders that are not final, in the sense of ending the litigation, are immediately appealable under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). To come within this doctrine, an "order must conclusively determine the disputed question, resolve an important issue

completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). As a general matter, an order denying a motion to dismiss does not end the litigation on the merits and is ordinarily not subject to appellate review until a final judgment has been entered. *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 450 (6th Cir.1988).

In *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), however, the Supreme Court held that an immediate interlocutory appeal could be taken from an order denying a claim of qualified immunity. The collateral order doctrine applies to such orders, *Mitchell* held, because qualified immunity entitles the defendant not to stand trial and a denial of immunity is thus effectively unreviewable on appeal from a final judgment. *Id.* at 525, 105 S.Ct. at 2814–15.

Given that a defendant in a section 1983 case has an absolute right immediately to appeal a denial of immunity, the question becomes what other issues may he also appeal at the same time. This question was answered by the Supreme Court recently in *Swint*, —— U.S ——, 115 S.Ct. 1203, and *Johnson*, —— U.S. ——, 115 S.Ct. 2151.

In *Swint*, a case appealed under *Mitchell*'s interlocutory appeal exception, the Court examined whether it had jurisdiction to review the denial of summary judgment to a party other than the one appealing from a denial of qualified immunity. The third party, a county commission, argued that the denial of its motion for summary judgment was a collateral order that was appealable under *Cohen*, or alternatively, that the court of appeals had "pendent appellate jurisdiction" to decide the questions appealed. *Swint*, —— U.S. at ——, 115 S.Ct. at 1207. The Supreme Court held that there was no "pendent party" appellate jurisdiction to hear the commission's claim; the denial of its summary judgment was not an appealable order under *Cohen*; and that a court's jurisdiction to hear interlocutory appeals on the basis of qualified immunity does not confer upon it jurisdiction to review the unrelated question of the commission's liability. *Id.* at ——, 115 S.Ct. at 1212.

The Court reasoned that the type of orders that are appealable under *Cohen* includes only "a small category [of] decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Id.* at ——, 115 S.Ct. at 1208. Following this analysis, the Court found that the commission's appeal failed the *Cohen* test because the decision of the district court was " 'tentative, informal or incomplete.' " *Id.* (citations omitted).

Secondly, the Court reasoned that the commission did not possess a right not to be tried, but only possessed " 'a mere defense to liability.' " *Id.* (citation omitted). Moreover, the Court explained, "[28 U.S.C.] § 1291 requires courts of appeals to view claims of a right not to be tried with skepticism, if not a jaundiced eye, ... for virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a right not to stand trial." *Id.* (internal quotation marks and citations omitted). The Court likewise rejected the Eleventh Circuit's reasoning that it had pendent appellate jurisdiction over the commission's claim because reviewing its claim would effectively put an end to the litigation. *Id.* at —— – ——, 115 S.Ct. at 1208–09.

Appellate courts do not have appellate jurisdiction to hear discretionary appeals outside the narrow categories statutorily set forth under section 1292(b), or those limited categories established pursuant to the Rules Enabling Act, 28 U.S.C. § 2071, *et seq.*, out of which *Cohen* and *Mitchell* arose. "Congress [ ] chose to confer on district courts first line of discretion to allow interlocutory appeals." *Swint*, —— U.S. at ——, 115 S.Ct. at 1210.

The Court, however, explicitly declined to decide "whether or when it may be proper for a court of appeals with jurisdiction over one ruling to review, conjunctively, related rulings that are not themselves independently appealable." *Id.* at ——, 115 S.Ct. at 1212. The Court suggested, nevertheless, that jurisdiction may properly be exercised where the unrelated questions were "inextri-

cably intertwined with [the] court's decision to deny" the defendants immunity, or when "review of the former decision was necessary to ensure meaningful review of the latter." *Id.*

On a related issue, the Supreme Court also recently held that a denial of a summary judgment motion on the basis of immunity under section 1983 is immediately appealable only when it presents " 'abstract issu[es] of law' " related to the qualified immunity question. *Johnson,* —— U.S. at ——, 115 S.Ct. at 2158 (citation omitted). That is, the order is not appealable if it presents disputed questions of fact. Concomitantly, the merits of plaintiffs' claims are likewise unreviewable at this stage. *See id.* at —— – ——, 115 S.Ct. at 2154–56 (quoting *Mitchell,* 472 U.S. at 527–28, 105 S.Ct. at 2816–17). Appellate courts may only review whether the district court "mistakenly identified clearly established law ... given [] the facts that [it] assumed when it denied summary judgment for that (purely legal) reason." *Id.* at ——, 115 S.Ct. at 2159. Although prohibiting public officials from immediately appealing the denial of qualified immunity on factual grounds might expose them to trials from which they should be shielded if genuine issues of fact do not truly exist, the Court reasoned, that risk is outweighed by the countervailing values of limiting collateral appeals. *Id.* at ——, 115 S.Ct. at 2158.

We conclude that we have no appellate jurisdiction to review the partial denial of Lanier's motion to dismiss because the merits of plaintiffs' claim are neither "inextricably intertwined" with the question of immunity, nor does review of the former ensure a meaningful review of the latter. Whether Lanier's sexual abuse of plaintiffs was a judicial act is not connected in any way to whether plaintiffs have stated a claim.

It seems clear that *Swint* intended to restrict discretionary appellate jurisdiction, rather than to expand it. The Court did not intend to enlarge the already narrow categories of interlocutory appeals when it stated that nonappealable questions may be addressed if they are "inextricably intertwined" with the issue that *is* appealable. Given the extent to which the Court engaged in a thorough explanation of the limited nature of appellate jurisdiction, the "inextricably intertwined" requirement was not meant to be loosely applied as a matter of discretion. Rather, the terms can only be understood, in the context of the opinion, to mean that pendent jurisdiction *may* be exercised only when the immunity issues absolutely cannot be resolved without addressing the nonappealable collateral issues. To read *Swint* otherwise is effectively to undercut the rule it established, and which in turn rests upon the permissible bounds of a federal appellate court's powers.

## IV.

For the reasons explained, we **AFFIRM** the denial of immunity, and **DISMISS** the portion of the appeal not dealing with the question of judicial immunity for lack of appellate jurisdiction.

MERRITT, Chief Judge, concurring.

I concur with the Court's opinion that there is no "judicial immunity" from civil liability in this § 1983 case. In *United States v. Lanier,* 73 F.3d 1380 (6th Cir.), *cert. granted,* —— U.S. ——, 116 S.Ct. 2522, 135 L.Ed.2d 1047 (1996), the criminal analogue to this civil case, we held that Lanier's conduct, the same conduct complained of here, does not constitute a federal crime under 18 U.S.C. § 242.

In that case, the government argued that Lanier's sexual assaults were made as a judicial official "under color of state law," an explicit requirement or element of a § 242 offense. In order for Lanier to be found criminally liable under § 242, "state action" must be present. A § 242 act "under color of state law" must be an act "under *pretense* of law," for "the acts of officers in the ambit of their *personal pursuits* are plainly excluded," *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945) (emphasis added). It must be a "misuse of power ... made possible only because the wrongdoer is clothed with the authority of law." *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). The sexual conduct here was singu-

larly "personal" and obviously not "clothed with the authority of law."

Had we agreed in the criminal case that Lanier was acting "clothed with the authority of state law" or "under pretense of law" in sexually assaulting women, we might be driven in this civil case to find in favor of Lanier's plea of judicial immunity. It would seem inconsistent to follow the government and say that Lanier was performing a judicial function under state law for purposes of criminal liability and then turn around and deny Lanier judicial immunity on the ground that he was not performing a judicial function.

The only consistent, sensible approach in this area of law is to say what seems obvious: Sexual assaults have nothing to do with the appearance of carrying out authorized judicial duties, exercising judicial power or performing the function of judging. Yielding to an unruly libido is not the exercise of judicial power, or somehow like or related to the performance of judicial duties. A ruling to the contrary would create a legal fiction beyond the pale of reason. Even for Dr. Freud, "carnal knowledge" is not really "knowledge," only a metaphor. A judge's long study of the law does not proceed from sexual appetites, even though we may sometimes say that "the law is a jealous mistress." To label Lanier's personal sexual proclivities as "state action" or judicial acts "under color of law" or "clothed with the authority of law" makes an interesting literary figure of speech. But that is all it is—a figure of speech, a metaphor. There may be no judicial immunity for such acts in the real world.